# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| McCOLLOUGH ENTERPRISES, LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION 09-0573-WS-B |
| MARVIN WINDOWS & DOORS, | ) ) | |
| Defendant. | ) ) | |

## ORDER

This action comes before the Court on defendant's Motion for Summary Judgment (doc. 17). The applicable briefing schedule having expired, this Motion is now ripe for disposition.[1]

## I.    Relevant Background.[2]

---

[1]    The only summary judgment memoranda in the court file are defendant's principal brief (doc. 17, exh. 1) and plaintiffs' opposition brief (doc. 23-1). Defendant elected not to submit a reply brief. This omission is at movant's peril, because federal courts are loath to become advocates for the parties or to formulate arguments that the parties could have presented but did not. *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment" and "the onus is upon the parties to formulate arguments"); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (federal courts "are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it"); *Federal Ins. Co. v. County of Westchester*, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk."). Also, the Court notes that movant's submission deviates from the technical requirements of Local Rule 7.1 in several respects (*i.e.*, failure to file proposed Determinations of Undisputed Fact and Conclusions of Law, failure to file a proposed order of judgment). Notwithstanding these omissions, the Court in its discretion will accept the Rule 56 Motion as filed and will consider it on the merits.

[2]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiffs' evidence is taken as true and all justifiable inferences are drawn in their favor.

Although the summary judgment record is fragmentary and the parties' "Statements of Fact" sections in their briefs span less than a single page in the aggregate, the relevant facts appear to be largely undisputed.

In 2001, defendant, Marvin Windows and Doors ("Marvin"), manufactured and sold windows to plaintiffs, McCollough Enterprises, LLC and Dr. E. Gaylon McCollough (collectively, "McCollough"), for a medical office building owned by plaintiffs and known as the McCollough Institute for Appearance and Health. (Brown Aff. (doc. 17, exh. 3), at 1.)[3] Plaintiffs' evidence is that McCollough entered into the sales contract with Marvin after being contacted by a Marvin representative concerning the McCollough Institute project. (Sted McCollough Aff. (doc. 23-2, at 13), at 1.) McCollough maintains that it agreed to utilize Marvin windows for that project on the strength of "the Marvin Representative's assurances regarding the quality and local serviceability of the window units." (*Id.*) According to plaintiffs, McCollough relied on Marvin's representations to plaintiffs' builder and architect "that it was a good product" in selecting Marvin windows for the building. (Dr. McCollough Dep., at 62-63.)

No written contact appears in the court file or is referenced in the parties' summary judgment briefs. Nonetheless, the parties agree that McCollough's purchase of Marvin windows for the project was subject to, and covered by, a document called "The Marvin Windows And Doors Ten-Year Limited Warranty" (the "Warranty").[4] The Warranty represented that Marvin was "committed to bringing you products of the highest quality and value" and was "just as committed to standing behind our products." (Doc. 17, Exh. 2A.) The Warranty specifically stated that "Marvin builds its windows and doors to be durable and long lasting." (*Id.*) Beyond these representations about quality and workmanship, the Warranty provided as follows:

---

[3]     The Complaint alleges that Marvin manufactured the windows "[o]n or about September 2003." (Complaint, ¶ 8.) Defendant appears never to have filed an answer as required by Rule 12, Fed.R.Civ.P.; therefore, it is unclear whether defendant admits that particular factual allegation. Notwithstanding the incomplete pleadings, the only evidence in the summary judgment record as to timing reflects that Marvin sold the windows to McCollough in 2001. Plaintiffs neither challenged nor rebutted this evidence. Therefore, the Court will accept that undisputed evidence as to time frame for summary judgment purposes.

[4]     Plaintiffs concede that Marvin provided the Warranty to them in a timely manner and that if their agent had "wanted to read it, he could have read the words that were there." (Dr. McCollough Dep., at 55.)

"Your Marvin product is warranted to be free from defects in manufacturing, materials and workmanship. If such a defect occurs, Marvin will, at its option (1) repair the defective product, (2) replace the defective materials or (3) refund your purchase price. ***If replacement is elected, Marvin will not be responsible for installation or refinishing of replacement parts***."

(*Id.* (emphasis added).) On its face, the Warranty "is valid for ten (10) years from the date your Marvin product was originally purchased." (*Id.*) Through the Warranty document, Marvin sought to limit its exposure to other kinds of damages and warranty claims. In that regard, the Warranty included a passage stating in all capital letters as follows:

"YOUR EXCLUSIVE REMEDY WITH RESPECT TO ANY AND ALL LOSSES OR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER SHALL BE AS SPECIFIED ABOVE. WE SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY KIND, HOWEVER OCCASIONED …. THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER EXPRESS WARRANTIES …."

(*Id.*)

The summary judgment record leaves a great deal to be desired in chronicling what happened next. Upon piecing together the handful of exhibits and admissions in the parties' briefs, the Court surmises that McCollough began experiencing difficulties with the windows in 2008. Images in the record purport to show more than a dozen cracking or rotting window frames. (Doc. 23-2, at 2-3.)[5] Apparently, these are windows installed by Marvin at the McCollough Institute in 2001. McCollough first contacted Marvin about these problems in approximately October 2008, in response to which Marvin offered to provide replacement sash and frames because the windows were "still under warranty." (Doc. 17, Exh. 2B.)[6] So far, so

---

[5] This exhibit consists of 16 scanned photographs, with the images aligned 8 per page. Those images purport to show damaged window frames. Plaintiffs provide no accompanying verbiage or description of these photos to confirm who took them, when they were taken, where they were taken, what they depict, and so on. Instead, plaintiffs would apparently have this Court resort to guesswork to fill in those fundamental evidentiary gaps.

[6] In extending this offer, Marvin did not concede that its windows were defective. To the contrary, Marvin's October 2008 letter to McCollough asserted that "there are other issues beyond product that are contributing to the decay found on the sash and frames" at the McCollough Institute. (*Id.*) That said, Marvin acknowledged that it was "impossible … to rule out entirely any and all product defects confined to the sash," and made its replacement offer under the Warranty on that basis. (*Id.*)

good.  Where Marvin's response fell short of McCollough's expectations, however, was that Marvin declined to "provide any labor or compensation for the installation of any window frames" or "refinishing expenses on any sash or frames."  (*Id.*)  In effect, then, Marvin offered to furnish McCollough with new product to replace the damaged windows, with the caveat that McCollough would be responsible for tear-out and installation costs.  In furtherance of this proposal, Marvin manufactured replacement windows for McCollough, and shipped them to an entity called Master Mill Works (presumably a neutral third party in this dispute, although the parties never explain its role) in Mobile, Alabama.  (Brown Aff., at 1.)

McCollough rejected Marvin's offer to replace the windows.  (*Id.*)[7]  As a result, the replacement windows manufactured by Marvin were never accepted or installed at the McCollough Institute.  Indeed, the record reflects that, from February 2009 through April 2009, the parties exchanged a series of written correspondence concerning the situation.  In letters dated February 6 and 10, 2009, McCollough took the position that an exterior glazing bead detail found in the original windows (and eliminated from the proposed replacement windows) was the culprit of the damage.  Because this feature was solely Marvin's doing, McCollough requested that Marvin pay "all costs associated with the removal and replacement of all units throughout the entire facility."  (Doc. 17, Exh. 2B, at 2-4.)   Marvin responded with a letter dated March 6, 2009, disputing McCollough's product failure argument and stressing that its decision to provide replacement windows had been merely "a measure of goodwill in resolving issues that most likely are the result of several factors besides the window itself."  (*Id.* at 5.)  Marvin's March 6 letter drew a line in the sand that defendant "will not be providing further product, nor will it provide compensation for installation or finishing of product."  (*Id.*)  The parties' remaining correspondence in March and April 2009 displayed sufficient intransigence on both sides that formal legal proceedings were an inevitability.  (*Id.* at 7-9.)  So the parties find themselves in federal court today simply because they ended at loggerheads over who should pay the cost of

_____

[7]        In his deposition, plaintiff Dr. E. Gaylon McCollough indicated that Marvin manufactured replacement windows, "delivered them to a warehouse and told us to come get them."  (Dr. McCollough Dep., at 53.)  Dr. McCollough confirmed that plaintiffs "did not accept those windows" because he did not "think that that's the way to do business" for Marvin to expect McCollough to cover labor costs to correct the purportedly defective product provided by Marvin in the first instance.  (*Id.* at 43-44.)

tearing out and installing brand-new windows that Marvin had initially offered to provide to McCollough free of charge, despite a dispute as to whether the original windows were even defective.[8]

Based on these facts, plaintiffs filed their Complaint against Marvin, alleging state-law causes of action for breach of contract (with the alleged breach being that Marvin provided defective windows), breach of express and implied warranties that its windows "would be of satisfactory workmanship and capable of withstanding the elements of the Alabama Gulf Coast" (Complaint, ¶ 15), and misrepresentations that its windows "were able to withstand the harsh elements of the Alabama Gulf Coast and would not rust" (*id.*, ¶ 22). Defendant now seeks summary judgment as to all of plaintiffs' causes of action.

## II. Summary Judgment Standard.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make

---

[8]    It bears noting that this Court has had multiple occasions to examine whether federal removal jurisdiction over this action exists. (*See* docs. 7, 22.) At the time of removal, the record showed that plaintiffs sought to recover both the cost of replacement windows (estimated at more than $56,000) plus tear-out and installation charges (estimated at between $54,000 and $58,000), which was clearly sufficient to satisfy the amount in controversy threshold of 28 U.S.C. § 1332. In the months following removal, however, plaintiffs pared down their demands, such that they now maintain that just 19 windows in the McCollough Institute have rot and require replacement. (Dr. McCollough Dep., at 51.) Plaintiffs originally sought replacement and installation costs for all 91 windows at the facility. So, as currently postured, plaintiffs are seeking only approximately $30,000 in damages (measured at $1,000 in product costs, plus $600 in tear-out/installation costs, for each of the 19 windows). Although plaintiffs theorized that this lowering of their sights divested this Court of subject-matter jurisdiction, an Order (doc. 22) entered on October 8, 2010 explains why plaintiffs' remand argument fails as a matter of law, and why their post-removal reduction of the amount in controversy is a fact devoid of jurisdictional significance. As things now stand, then, the parties are on the precipice of a jury trial in federal court because they could not agree on allocation of approximately $600 in tear-out/installation costs for each of 19 damaged windows.

'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.    Analysis.

Movant contends that entry of summary judgment in its favor is warranted on the following grounds:  (i) plaintiffs' claims are barred by applicable statutes of limitations; (ii) plaintiffs' breach of contract claim fails because defendant did not breach any contract between the parties; (iii) plaintiffs' breach of warranty claim fails because defendant did not breach any express or implied warranty; and (iv) plaintiffs' misrepresentation claim fails because defendant did not make any fraudulent misrepresentations.  Each issue will be considered in turn.

### A.    *Whether Plaintiffs' Claims are Untimely.*

The parties appear to concur that plaintiffs' breach of warranty cause of action is subject to a four-year limitations period, and that plaintiffs' misrepresentation claim is subject to a two-year limitations period.  (Doc. 17-1, at 4-5; doc. 23-1, at 2.)  Alabama law reinforces the propriety of applying those time frames here.  *See* Ala. Code § 7-2-725(1) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."); Ala. Code § 6-2-3 (identifying limitations period for fraud claims of two years following discovery).  Defendant's limitations argument, reduced to its essence, is that the parties entered into an agreement for Marvin to provide windows to McCollough in 2001, but plaintiffs did not file suit until April 2009, long after these respective limitations periods had expired.  This skeletal argument is fundamentally incorrect because it disregards applicable accrual rules for warranty and fraud claims under Alabama law.

As for the breach of warranty claims, the very statute on which Marvin relies states that causes of action accrue "when the breach occurs" and that "[a] breach of warranty occurs when

tender of delivery is made, ***except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.***" Ala. Code § 7-2-725(2) (emphasis added); *Brown v. General Motors Corp.*, 14 So.3d 104, 113 (Ala. 2009) (holding that claim for breach of warranty in sale of goods context accrues "at the time the manufacturer breaches its contractual obligation to repair that good," rather than "at the time of the tender of delivery of the goods in question"). The Warranty at issue in this case covered defects that might arise with Marvin products for 10 years after the sale, such that it clearly extended to future performance of the goods. McCollough could not have discovered any breach until the time of such future performance of the goods. Accordingly, under the plain language of § 7-2-725(2), the claim accrued when the alleged breach of warranty was or should have been discovered, rather than at the time of tender of the original product. Defendant does not argue (and there is no record evidence to support an inference) that McCollough either discovered or should have discovered the defect in the windows more than four years before filing suit. Moreover, the record in the light most favorable to plaintiffs shows that McCollough demanded performance under the warranty in late 2008 and early 2009, and that any breach of Marvin's warranty obligation occurred at that time (not earlier); therefore, plaintiffs' claim for breach of warranty accrued in approximately early 2009 pursuant to the Alabama Supreme Court's holding in *Brown*.[9]

Similarly, the two-year Alabama limitations period for fraud is subject to a discovery rule. *See, e.g.,* Ala. Code § 6-2-3 (in fraud context, "the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud"); *Dickinson v. Land Developers Const. Co.*, 882 So.2d 291, 298 (noting that the "discovery rule … applies to

---

[9]      Faced with plaintiffs' summary judgment argument that, by operation of § 7-2-725(2), their breach of warranty claim accrued only when plaintiffs discovered the breach, defendant says nothing. Indeed, defendant elected to forego filing a reply brief at all. It is not incumbent on courts to synthesize arguments that summary judgment movants do not raise. Inasmuch as the statutory language supports plaintiffs' contention that the breach of warranty claim did not accrue until the breach was discovered, and inasmuch as defendant has not argued or shown that the breach was discovered more than four years prior to the filing of the Complaint, defendant's limitations argument cannot prevail as to the breach of warranty cause of action.

fraud claims" and that the "question of when a party discovered or should have discovered the fraud is generally one for the jury") (citations omitted).  Plaintiffs' evidence is that they first learned that Marvin's representations about the quality of its product were false when they discovered the window rot in 2008.  Given these facts, straightforward application of § 6-2-3's discovery rule establishes that plaintiffs' fraud claim did not accrue more than two years prior to initiation of this lawsuit in April 2009; therefore, that claim is not time-barred.[10]

Plaintiffs' breach of contract claim rests on a different limitations footing than the other causes of action.  Defendant maintains that this claim is one for breach of contract for the sale of goods, and is subject to the four-year limitations period prescribed by § 7-2-725.[11]  Plaintiffs counter that "[t]he breach of contract alleged is not for the sale of goods.  Rather the breach is the rot that caused the windows to fail."  (Doc. 23-1, at 2.)  This cryptic response is inadequate on several levels.  In the first place, McCollough does not explain what "contract" the "rot" could have breached other than a contract for the sale of goods.  The only contract the Complaint identifies is that under which McCollough purchased windows from Marvin.  Without question, this is a sale of goods case.  Moreover, even if plaintiffs were correct that the general contract limitations period (rather than the sale-of-goods contract limitations period) is in play here,[12] that provision would not render their breach of contract claim timely.  Regardless of whether the four-year sale-of-goods limitations period or the six-year general contract limitations period applies, the Complaint was filed eight years after Marvin allegedly breached the contract by furnishing faulty windows.  That's too late.  McCollough apparently contends that the breach of

---

[10]    Once again, defendant fails to posit any argument in support of its position. Instead, Marvin merely quotes the applicable passage from § 6-2-3, without articulating any theory for why the facts of this case warrant a finding that McCollough's fraud claim accrued more than two years before suit was filed.  The Court is left to guess why Marvin thinks plaintiffs discovered the fraud outside the two-year period.

[11]    Again, that section provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."  Ala. Code § 7-2-725(1).

[12]    Another Alabama statute fixes a limitations period of six years for "[a]ctions upon any simple contract or speciality [*sic*] not specifically enumerated in this section."  Ala. Code § 6-2-34(9); *AC, Inc. v. Baker*, 622 So.2d 331, 333 (Ala. 1993) ("The statute of limitations for a claim based on a contract is six years.").

-8-

contract cause of action accrued at the moment the rot was discovered, but it provides no legal support for that proposition. Alabama law does not recognize a discovery rule for breach of contract actions. *See* § 7-2-725(2) (in action for breach of contract for sale of goods, "[a] cause of action accrues ***when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach***") (emphasis added); *AC, Inc. v. Baker*, 622 So.2d 331, 333 (Ala. 1993) ("This six-year period begins to run when the contract is breached.").[13] Plaintiffs protest that this action "was filed only one (1) year after the rot was discovered" (doc. 23-1, at 2), but they do not identify a single authority for the proposition that when the rot was discovered matters one whit under Alabama law for accrual of their breach of contract (rather than breach of warranty or fraud) cause of action.

Under plaintiffs' theory, Marvin breached the contract by supplying McCollough with windows that later rotted. As plaintiffs put it, "the breach is the rot." (Doc. 23-1, at 2.) This breach occurred not when the rot was discovered (after all, Marvin did not do or fail to do anything contemporaneously with that discovery that would amount to a breach of contract), but instead when Marvin supplied allegedly defective windows. Therefore, McCollough's breach of contract claim accrued in 2001, when Marvin allegedly breached the contract by furnishing McCollough with windows that subsequently rotted.[14] Plaintiffs did not sue until 2009, well

---

[13]     *See also Wheeler v. George*, 39 So.3d 1061, 1084 (Ala. 2009) ("It is well settled that a cause of action for breach of contract accrues when the contract is breached."); *Mississippi Valley Title Ins. Co. v. Hooper*, 707 So.2d 209, 213 (Ala. 1997) ("In a breach of contract action, for example, the limitations period runs from the time the contract is broken, although substantial damage or loss from the breach is not sustained until afterward. … Even if the plaintiff is ignorant of the injury at the time …, the limitations period begins to run."); *In re Northwestern Mut. Life Ins. Co. Sales Practices Litigation*, 70 F. Supp.2d 466, 494 (D.N.J. 1999) (under Alabama law, "contract claims are not subject to a 'discovery rule' that tolls the statute pending discovery of the breach").

[14]     Stated differently, plaintiffs do not contend that Marvin did or failed to do anything to breach the contract after furnishing the original windows. In the words of the Complaint, "Defendant breached said contract in that it constructed windows that were defective." (Complaint, ¶ 11.) Similarly, plaintiffs' summary judgment brief explains that the parties "had a binding contract for the custom manufacture of windows," and that Marvin "did not perform under the contract because the windows have rotted." (Doc. 23-1, at 3.) Thus, both the pleadings and plaintiffs' brief establish that McCollough's contract claim identifies the breach as Marvin's supplying of poor-quality windows to McCollough in 2001, rather than any
(Continued)

outside the relevant four-year limitations period applicable in Alabama to a claim of breach of a contract for sale of goods.

To summarize, plaintiffs' breach of contract cause of action is untimely as a matter of law given that (i) a cause of action for breach of contract for sale of goods must be brought within four years after it accrues; (ii) the cause of action accrues when the breach occurs, regardless of plaintiffs' knowledge or lack thereof; (iii) plaintiffs' position is that defendant breached the contract by supplying shoddy windows; and (iv) defendant provided those windows to plaintiffs in 2001, some eight years prior to the initiation of this lawsuit. Accordingly, the Motion for Summary Judgment will be **granted** as to plaintiffs' breach of contract claim, and that cause of action will be **dismissed with prejudice** as time-barred.

### B.    *Plaintiffs' Breach of Warranty Cause of Action.*

Next, Marvin contends that it is entitled to summary judgment on the breach of warranty cause of action because the record shows that it did not breach the Warranty. Defendant says that it complied fully with its Warranty obligations when it offered to provide replacement windows to plaintiffs. Although McCollough demands that Marvin pay for tear-out and installation costs for the new windows, defendant maintains that such expenditures were not required by (and were negated by express limitations in) that Warranty. Specifically, Marvin points out that the Warranty excluded liability for consequential or incidental damages, and expressly stated that Marvin would not be responsible for installation or refinishing of replacement parts. Defendant's Rule 56 position, then, is that plaintiffs' warranty claim overreaches by ignoring express limitations of remedies set out in the Warranty itself.

In response, McCollough opposes defendant's Rule 56 Motion on the following three grounds: (i) the Warranty suffers from vague and ambiguous language as to defendant's responsibilities, (ii) the limitations set forth in the Warranty are unconscionable, and (iii) the limitations cause the Warranty to fail of its essential purpose. None of these contentions are availing, for the reasons set forth below.[15]

---

subsequent acts or omissions. Any breach happened in 2001, so the contract claim accrued then, irrespective of when plaintiffs learned of the rot.

[15]    Plaintiffs do not argue that Marvin failed to provide replacement product pursuant to the Warranty. To the contrary, the record is clear that Marvin ordered and delivered new
(Continued)

### 1. *The Warranty is Neither Vague Nor Ambiguous.*

As their first attempt to save their breach of warranty cause of action from the swing of the summary judgment axe, plaintiffs assert that the Warranty's limitation provisions should be construed against Marvin because they are "vague, ambiguous and confusing." (Doc. 23-1, at 4.) It is certainly correct that, in general, ambiguities in warranties may be construed against the drafter under the rule of *contra proferentem*.[16] But the offending provisions cited by McCollough are not ambiguous at all. For example, plaintiffs balk that the Warranty "does not set out who gets to elect the method of recovery under the warranty." (Doc. 23-1, at 4.) This is counterfactual. The Warranty specifies that Marvin "at its option" will repair defective product, replace defective materials, or refund the purchase price. The Warranty thus clearly designates Marvin as the party selecting the method of recovery in a particular case.[17]

---

windows for McCollough in fulfillment of its warranty obligations, but that McCollough rejected that offer and insisted that Marvin do more. What this means is that, unless plaintiffs can show that the Warranty required Marvin to go beyond merely furnishing new windows or that the limitations in the Warranty are unenforceable, then Marvin was not in breach of the Warranty. Also, it bears noting that plaintiffs do not contend that any implied warranties survive summary judgment review. Defendant expressly moved for summary judgment on plaintiffs' claims for breach of implied warranty, arguing that all such warranties were either disclaimed or not breached. (Doc. 17-1, at 8.) Plaintiffs elected not to address this argument at all, as their response is entirely silent as to any claims for breach of implied warranty. Again, this Court's role on summary judgment is not to articulate and develop either side's legal arguments. Plaintiffs having failed to address defendant's facially reasonable contention that the Warranty operates to the exclusion of other express or implied warranties, the Court will consider the express written Warranty to be the only operative warranty in this case.

[16] Under Alabama law, "[e]xpress warranties are treated like any other type of contract and are interpreted according to general contract principles. … Moreover, any ambiguity is construed against the drafter, as a general principle of contract construction." *Southern Energy Homes, Inc. v. Washington*, 774 So.2d 505, 512-13 (Ala. 2000).

[17] Insofar as plaintiffs hinge their breach of warranty claim on the "process of unilateral decision-making regarding the remedies within the warranty" (doc. 23-1, at 4), then, such a claim is meritless. The Warranty expressly provided for "unilateral decision-making," with Marvin being empowered to choose at its sole option among remedies of repair, replacement or refund. Far from breaching the Warranty, Marvin exercised rights specifically reserved to it by that Warranty when it unilaterally decided to replace McCollough's windows, rather than repairing them or refunding plaintiffs' money.

Plaintiffs also assert that the term "replace" in the Warranty is ambiguous because plaintiff Dr. McCollough construes "replace" as contemplating both the furnishing of substitute product and the installation of such product, not simply the former.[18]  Seizing on Dr. McCollough's testimony, plaintiffs argue that "[c]learly, the terms replace or replacement within the [Warranty] are open to interpretation."  (Doc. 23-1, at 5.)  The glaring flaw with this line of reasoning is that it ignores the black-letter rule that contract provisions must be construed in context, rather than in isolation.[19]  McCollough would have this Court deem the Warranty ambiguous because the phrase "replace the defective materials" is subject to differing interpretations as to whether "replace" means "provide new materials" or "provide and install new materials."  However, the very next sentence in the Warranty eradicates any possible confusion on this score by stating that, "If replacement is elected, Marvin will not be responsible for installation or refinishing of replacement parts."  (Doc. 17, Exh. 2A.)  Thus, upon considering the Warranty in its entirety (as Alabama law mandates), the Court finds no possible ambiguity as to whether Marvin's replacement obligation contemplated installation of new windows, as opposed to simply furnishing materials.  As written, the Warranty is crystal clear that replacement does not include installation or refinishing of replacement parts.  To the extent that plaintiffs argue otherwise, they unreasonably isolate one word ("replace") in the Warranty at the

---

[18]     In his deposition, Dr. McCollough testified that Marvin did not replace the windows because, in his view, "[r]eplace them means replace what's there with something else. … They delivered them to a warehouse and told us to come get them. … That's not replacement. … [T]he way that I interpret the word 'replacement' may be different from the way you interpret the word 'replacement'."  (Dr. McCollough Dep., at 52-54.)  Plaintiffs would use this testimony as a springboard to a determination that the Warranty is ambiguous and must be construed against the drafter.

[19]     *See generally Doster Const. Co. v. Marathon Elec. Contractors, Inc.*, 32 So.3d 1277, 1283 (Ala. 2009) ("Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract.") (citation omitted); *Gulf Coast Realty Co. v. Professional Real Estate Partners, Inc.*, 926 So.2d 992, 1005 (Ala. 2005) ("It is well settled that a court in seeking to ascertain the intention of the parties in construing a contract, will consider the contract as a whole, although the immediate object of the inquiry is the meaning of a particular clause.") (citations omitted); *RLI Ins. Co. v. MLK Ave. Redevelopment Corp.*, 925 So.2d 914, 919 (Ala. 2005) ("[a] court must construe a contract in its entirety, and single provisions of sentences are not to be dissociated from others having reference to the same subject matter") (citations omitted).

expense of construing the document as a whole, all in contravention of Alabama contract construction principles. The meaning of the term "replace" is ambiguous only if one shields one's eyes from language in the Warranty that unequivocally resolves the ambiguity.

Simply put, plaintiffs' theory is that the term "replace" is ambiguous, and must be construed against defendant, such that Marvin is in breach of the Warranty by not providing installation services bound up in the term "replace." But a straightforward reading of the Warranty as a whole reveals that it is not ambiguous on this point. Marvin's "replacement" option expressly excludes installation and refinishing of the new product. This Court must enforce an unambiguous contractual provision as written. *See, e.g., Shoney's LLC v. MAC East, LLC*, 27 So.3d 1216, 1223 (Ala. 2009) ("Where the language is unambiguous, and but one reasonable construction of the contract is possible, it must be expounded as made, as the courts are not at liberty to make new contracts for the parties.") (citations and emphasis omitted). Because the Warranty plainly did not obligate defendant to install replacement product that it furnished, Marvin did not breach that warranty by declining to perform such installation.[20]

> ### 2. *The Warranty's Limitations are Not Unconscionable.*

As a distinct theory for preserving their breach of warranty cause of action, plaintiffs maintain that the Warranty's prohibition on recovery of incidental or consequential damages is unconscionable and therefore unenforceable under Alabama law.

The literal language of the Warranty's conspicuous disclaimer reads that Marvin "SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY KIND, HOWEVER OCCASIONED." (Doc. 17, Exh. 2A.) It is

---

[20]     Plaintiffs' fallback position is that "none of the terms have been honored. The subject windows have not been repaired, ***replacement windows have not been delivered*** and/or McCollough has not been refunded the purchase price." (Doc. 23-1, at 5-6 (emphasis added).) Plaintiffs inaccurately characterize the facts. Construed in the light most favorable to McCollough, the summary judgment record reflects that defendant offered to provide replacement windows to McCollough in fulfillment of its Warranty obligation and even manufactured and shipped replacement windows to a nearby location, but that McCollough rejected that offer. Plaintiffs cannot maintain a breach of warranty cause of action against Marvin when the sole reason for Marvin's non-performance is plaintiffs' rejection of the replacement product that Marvin manufactured and shipped to Mobile in fulfillment of the Warranty provisions. Marvin did not perform under the Warranty because McCollough frustrated its performance. Plaintiffs cannot parlay their refusal of Marvin's performance under the Warranty into a viable breach of warranty cause of action.

apparently undisputed that the types of damages claimed by McCollough (*i.e.*, tear-out and installation costs) qualify as incidental or consequential damages. [21] The question is whether that limitation of remedies is enforceable. In general, the answer is affirmative. Alabama courts observe that "[c]ontracting parties have a right to express the limitations under which they will be bound, and such clearly manifested limitations will be recognized by the courts." *Stewart v. Bradley*, 15 So.3d 533, 542 (Ala.Civ.App. 2008) (citations omitted); *see also Leonard v. Terminix Int'l Co.*, 854 So.2d 529 (Ala. 2002) ("Alabama law clearly permits a seller to limit or exclude by contract any liability for consequential damages …. Such agreements are valid and enforceable.") (citation omitted); Ala. Code § 7-2-719(3) (stating that, in general, "[c]onsequential damages may be limited or excluded").

Nonetheless, McCollough asserts that the Warranty's disclaimer of consequential damages is unenforceable because it is unconscionable. It is true enough that Alabama law strikes down limitations on consequential damages in the sale of goods context if those limitations are "unconscionable." Ala. Code § 7-2-719(3); *see also Morgan Building and Spas, Inc. v. Gillett*, 762 So.2d 366, 373 (Ala.Civ.App. 2000) ("We note that consequential damages may not be limited where such a limitation would be unconscionable."). But the statute explains that "[l]imitation of consequential damages … where the loss is commercial is not" *prima facie* unconscionable. Ala. Code § 7-2-719(3). Of course, this case concerns a commercial loss involving damaged windows in a medical office building; therefore, there is no *prima facie* unconscionability presumption in play here.

Plaintiffs' principal argument for why the exclusion of consequential damages is unconscionable is that "[a]ny customer would expect a warranty to put him back in the same position he would have been in had the breach not occurred," yet this Warranty does not do so because it shifts to the buyer the not-insubstantial cost of tearing out and reinstalling windows.

---

[21]     The parties' accord on this point is appropriate. Relevant Alabama Code provisions define "incidental damages" as including "commercially reasonable charges, expenses or commissions in connection with effecting cover" and define "consequential damages" as including "[i]njury to person or property proximately resulting from any breach of warranty." Ala. Code § 7-2-715. Under these definitions, McCollough's alleged losses are properly classified as consequential damages. Plaintiffs concede as much. (*See* doc. 23-1, at 6 (arguing that costs of tear-out and installation of new windows are consequential damages under § 7-2-715).)

(Doc. 23-1, at 6.)[22]  Plaintiffs identify no legal foundation for their apparent contention that limitations of remedies in commercial warranties are *per se* unconscionable unless they place the buyer "back in the same position he would have been in had the breach not occurred."  More fundamentally, plaintiffs' argument sweeps far too broadly.  By definition, <u>any</u> limitation on consequential damages would prevent the customer from being restored fully to his pre-breach condition under a warranty.  Indeed, such is the whole point of a limitation of remedies.[23]  So by plaintiffs' reasoning, all warranty provisions limiting consequential damages are unconscionable because a buyer who cannot recover consequential damages will be in a less favorable position than if there were no breach.  Plaintiffs have cited no authority in support of such a remarkable proposition.  Section 7-2-719(3) and considerable case law counsel otherwise.  *See, e.g., Leonard*, 854 So.2d at 534-35 (arbitration clause held not to be "unconscionable solely because it purports to preclude a remedy for indirect special or consequential damages or loss of anticipated profits") (internal quotation marks omitted); *Fleming Farms v. Dixie Ag Supply, Inc.*, 631 So.2d 922, 926 (Ala. 1994) (limitations of liability for herbicide products sold to cotton farmers held not unconscionable under § 7-2-719); *Puckett, Taul & Underwood v. Schreiber Corp.*, 551 So.2d 979, 983 (Ala. 1989) (in context of commercial transaction, "the clear public policy in Alabama is to allow a seller to limit the remedies available to a buyer"); *Kennedy Elec. Co. v. Moore-Handley, Inc.*, 437 So.2d 76, 81 (Ala. 1983) (where contract for supply of electrical equipment included exclusions of consequential damages, court rejected contention that such "limiting conditions are unconscionable" because "Alabama law clearly permits a seller to limit or exclude by contract any liability for consequential damages"); *Moorer v. Hartz Seed Co.*, 120 F. Supp.2d 1283, 1295 (M.D. Ala. 2000) (under Alabama law, "stipulated remedies and limitations of

---

[22]    Plaintiffs' brief continues that "Marvin wants to mail the parts to McCollough and have him pay for the installation.  Such is clearly unconscionable."  (Doc. 23-1, at 6.)  Why?  What principle of Alabama law, or specific factual circumstance in this case, makes that result "clearly unconscionable"?  Plaintiffs do not elaborate, but would apparently have the Court rule that the limitation of remedies in the Warranty is unconscionable simply because plaintiffs say that it is.  It is incumbent on plaintiffs to develop their own legal arguments.

[23]    On its face, a "consequential damage" is an injury to the buyer occasioned by the breach.  So any time the seller does not pay consequential damages, the buyer has not been "put … back in the same position he would have been in had the breach not occurred."  (Doc. 23-1, at 6.)

consequential damages are frequently enforced where the injured party is a business person suffering a commercial loss").

In sum, McCollough urges this Court to strike down the Warranty's limitation of consequential damages as unconscionable but offers neither reasoning nor authority that might support that result. The aspect of the limitation that McCollough identifies as unconscionable is one found in virtually every single limitation of remedies provision in virtually every commercial warranty. To accept McCollough's position would be to invalidate this entire class of limitations as unconscionable. Alabama law is fundamentally incompatible with such a result. *See Puckett*, 551 So.2d at 982 ("the clear public policy in Alabama is to allow a seller to limit the remedies available to a buyer"). Plaintiffs having failed to point to any principle of law or circumstance of fact that would justify striking down the Warranty's limitations of remedies, or that would give rise to jury questions on that issue, their cursory invocation of the "unconscionability" doctrine is inadequate to spare their breach of warranty claim from Rule 56 dismissal.[24]

> 3.      *The Warranty Does Not Fail of Its Essential Purpose.*

Finally, plaintiffs urge the Court to deny defendant's Motion for Summary Judgment as to the breach of warranty claim because the limitation of remedy provision in Marvin's Warranty fails of its essential purpose. Alabama law is clear that where a warranty fails of its essential purpose, a buyer is not constrained by its limitation of remedy provisions. *See* Ala. Code § 7-2-719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.").

Alabama courts have deemed a warranty to fail of its essential purpose only in very narrow circumstances. As a general proposition, "[i]n order to show that the warranty failed of its essential purpose, [plaintiff] must either show that the dealer refused to repair or replace the [product] in accordance with the warranty or that the dealer did not repair the [product] within a

---

[24]      The same result is obtained upon consideration of plaintiffs' insinuation that the limitation of consequential damages is unconscionable because the installation costs in dispute here are "an expense which reasonably flows from the breach and, logically, should be a part of the expenses borne by the manufacturer." (Doc. 23-1, at 6.) Plaintiffs identify no authority, and the Court is aware of none, providing that an unconscionability analysis should turn on a court's normative sense of who "logically should" pay a particular form of consequential damages.

reasonable time." *Ag-Chem Equipment Co. v. Limestone Farmers Co-op., Inc.*, 567 So.2d 250, 252 (Ala. 1990); *see also Lipham v. General Motors Corp.*, 665 So.2d 190, 192 (Ala. 1995) (warranty fails of essential purpose when "either the dealer refused to repair or replace the malfunctioning component, or failed to do so within a reasonable time") (citation omitted). The idea behind this "failure of essential purpose" doctrine is that a seller cannot limit the buyer to certain specified remedies, then conduct itself in a manner negating the efficacy of those remedies. *See generally Ex parte Miller*, 693 So.2d 1372, 1379 n.10 (Ala. 1997) (explaining that "[t]he main point of this doctrine … is to prevent a warrantor from limiting its customers solely to the remedy of repair after it has become obvious to reasonable persons that the warrantor cannot or will not repair the machine in compliance with the limited warranty"). A common example is that a warranty fails of its essential purpose where the warranty obligates the seller to repair a defective product, but the seller refuses or is incapable of performing the repairs when the warranty is invoked. If the remedy promised by the seller is so hollow or ineffectual as to be meaningless, then the warranty fails of its essential purpose and the customer is not bound by limitations of remedy contained therein.

That said, warranties do not fail of their essential purpose without proof that the seller was unable or unwilling to abide by its promised remedies. *See, e.g., DaimlerChrysler Corp. v. Morrow*, 895 So.2d 861 (Ala. 2004) (warranty does not fail of essential purpose where defendant offered to replace defective truck with a new truck, but plaintiff rejected offer of replacement because new truck theoretically could fail); *Ag-Chem*, 567 So.2d at 252 (warranty did not fail of essential purpose where plaintiff never tendered engine to defendant for repair because it did not want defendant to repair it); *Feil v. Wittern Group, Inc.*, 784 So.2d 302, 311 (Ala.Civ.App. 2000) (concluding that express warranty requiring plaintiff to bear all shipping and installation costs did not fail of essential purpose were defendants never "failed or refused to supply [plaintiff] with replacement parts that he needed during the warranty period").

The "failure of essential purpose" doctrine has no conceivable application here. Marvin promised to repair or replace defective windows. When McCollough reported that its windows were defective, Marvin timely manufactured and shipped replacement windows for plaintiffs' use. There are no indications in the record, and no facts supporting any reasonable inference,

that the replacement windows were themselves defective.[25]  Marvin conducted itself in a manner that reflected full and prompt compliance with its obligations under the Warranty.  Plaintiffs have adduced no evidence whatsoever that Marvin refused to supply McCollough with replacement product during the warranty period, that Marvin unreasonably delayed in furnishing replacement windows, or that the replacement product was obviously faulty or nonconforming in some way.  Far from failing of its essential purpose, then, Marvin's Warranty functioned in this case in precisely the manner it was drafted and designed to function.

Plaintiffs' argument that the Warranty fails of its essential purpose proceeds from a misapplication of Alabama law.  According to plaintiffs, "Alabama law has long held that a limitation of remedies under a warranty to repair or replace goods fails of its essential purpose if the seller does not provide goods which conform to the contract."  (Doc. 23-1, at 7.)  But the relevant "goods" for that analysis are the replacement products, not the original products.  *See, e.g., Burbic Contracting Co. v. Cement Asbestos Products Co.*, 409 So.2d 1, 6 (Ala. 1982) (warranty did not fail of its essential purpose where defendant "replaced any pipe that was defective in material or workmanship").[26]  Whether the original product was or was not defective is immaterial to the "failure of essential purpose" inquiry; rather, as the foregoing Alabama authorities demonstrate, the critical question is whether the seller proves ready, able and willing to abide by its promise to repair or replace that original product with conforming product within

---

[25]     To the contrary, plaintiffs analyzed a replacement window unit furnished by Marvin and argued that design modifications in the new windows proved that the old windows were defective, reasoning that Marvin had modified the new windows to alleviate the defects. (*See* doc. 23-2, at 7 (letter from McCollough stating that old windows had "exterior glazing bead" missing from new windows, and that McCollough had "determined that the exterior glazing bead detail is the cause of damage and water intrusion into the building").)  Thus, plaintiffs have staked themselves to a position that Marvin's proffered new windows under the Warranty <u>corrected</u> (rather than perpetuated) defects in the original windows.

[26]     Again, plaintiffs' argument cuts far too wide a swath through Alabama jurisprudence.  If plaintiffs were correct that the provision of nonconforming goods in the first instance causes a warranty to fail of its essential purpose, then <u>every</u> warranty would fail of its essential purpose as soon as the buyer invoked it.  After all, the whole reason why a warranty comes into play in a commercial transaction is because the original goods malfunctioned (*i.e.*, they were "nonconforming" in some way).  If the seller can and does repair or replace those nonconforming goods within a reasonable time, then the warranty does not fail of its essential purpose, but instead fulfills that essential purpose.

a reasonable time after the defect is brought to its attention. Thus, plaintiffs' focus on the allegedly nonconforming status of the original windows is unhelpful and unilluminating.

In light of the foregoing, McCollough's contention that the Warranty failed of its essential purpose because the windows supplied by Marvin in 2001 were defective is incorrect as a matter of Alabama law. Even if plaintiffs are correct that the original windows were "defective products," the Warranty could fail of its essential purpose only if Marvin failed or refused to fulfill its promise to repair, replace or refund, at its option. Plaintiffs identify no record evidence of any such shortcomings on Marvin's part, and all record evidence is otherwise; therefore, the "failure of essential purpose" attack on the Warranty has no application here and cannot save plaintiffs' breach of warranty cause of action from dismissal on summary judgment.

### C. *Plaintiffs' Misrepresentation Cause of Action.*

Defendant also moves for summary judgment as to plaintiffs' fraudulent misrepresentation cause of action. As pleaded in the Complaint, this claim posits that Marvin misrepresented material facts about the quality of the windows and that plaintiffs relied on those representations to their detriment.

Marvin's argument for summary judgment on the misrepresentation claim is confined to a single page of its brief, and flows from the conclusory premise (unsupported by any record citations) that "Marvin did not make any misrepresentation on which the Plaintiffs relied." (Doc. 17-1, at 9.) That statement is wholly insufficient to satisfy defendant's initial burden on summary judgment under the Federal Rules of Civil Procedure. At a minimum, a summary judgment movant must "***point to materials on file that demonstrate*** that the party bearing the burden of proof at trial will not be able to meet that burden. … [I]t is never enough simply to state that the non-moving party cannot meet its burden at trial." *Abrams v. Ciba Specialty Chemicals Corp.*, 2009 WL 3254443, *4 n.9 (S.D. Ala. Oct. 1, 2009) (citation omitted).[27]

---

[27] *See also Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) ("It is never enough for the movant simply to state that the non-moving party cannot meet its burden at trial.") (citation omitted); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2000) ("When a party moves for summary judgment, … it is not enough for the moving party to merely make a conclusory statement that the other party has no evidence to prove his case.") (citation and internal quotation marks omitted); *Great Northern Ins. Co. v. Ruiz*, 688 F. Supp.2d 1362, 1368 (S.D. Ga. 2010) ("A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient" to satisfy summary judgment movant's initial burden).

Marvin's bare unadorned statement that it did not make any misrepresentations and there was no reliance does not satisfy its initial burden; therefore, denial of defendant's Rule 56 Motion is appropriate as to this claim for the purely procedural reason that Marvin's nonexistent showing on this claim flunks Rule 56 scrutiny.

Even if the Court were to overlook Marvin's abdication of its initial burden, plaintiffs' misrepresentation claim would nonetheless survive summary judgment because the record viewed in the light most favorable to McCollough establishes genuine issues of material fact as to misrepresentations and reliance. The architect of the McCollough Institute has averred that a Marvin representative made false "assurances regarding the quality and local serviceability of the window units," and that such assurances were instrumental to his decision to approve the use of Marvin windows for the project. (Sted McCollough Aff., at 1.) Defendant's summary judgment filings neither address this affidavit nor in any way discuss the sufficiency of the allegations therein under Rule 56 purposes. This Court will not "fill in the blanks" for arguments that defendant has not raised. Likewise, plaintiffs point to Dr. McCollough's deposition testimony that Marvin representatives made representations to McCollough agents that "it was a good product," that those representations were false, and that McCollough relied on those representations in deciding to use Marvin windows. (Dr. McCollough Dep., at 62-63.) Again, defendant fails to acknowledge this record evidence, much less to propound argument or explanation for why it believes such evidence is insufficient to create genuine issues of material of fact as to the misrepresentation claim.

Defendant's only other argument on the misrepresentation cause of action consists of a lengthy block quote from *Massey Automotive, Inc. v. Norris*, 895 So.2d 215, 220 (Ala. 2004), followed by a conclusory statement that "[a]ny reliance that the Plaintiffs supposedly have on any statements misrepresented to them was not reasonable" because "[u]nder no circumstances was it 'reasonable' for the Plaintiffs to rely on anything else beyond the warranty expressly provided to them and set out in such detail." (Doc. 17-1, at 9.) But plaintiffs respond that the Warranty was part of the problem; indeed, the Warranty included representations that McCollough's windows would be built "with careful craftsmanship and attention to detail," that the windows would be of "the highest quality and value," and that the windows were built "to be durable and long lasting." (Doc. 17-2, Exh. 2A.) Plaintiffs contend that all of these statements in the Warranty were false and that they relied on such representations in deciding to go forward

with Marvin products. Viewing the record in the light most favorable to McCollough, this case is nothing like the language in *Massey Automotive*, where the Alabama Supreme Court explained that a fraud claim is not viable if a plaintiff "made a deliberate decision to ignore written contract terms that clearly contradicted the alleged misrepresentations." 895 So.2d at 220 (citation omitted). Far from contradicting Marvin's alleged misrepresentations about quality of its product, the Warranty reinforced and expounded on those misrepresentations. As such, defendant's largely unexplained reliance on *Massey Automotive* is unavailing. *See generally Sexton v. Bass Comfort Control, Inc.*, --- So.3d ----, 2010 WL 4678941, *5 (Ala.Civ.App. Nov. 19, 2010) (trial court's entry of summary judgment on misrepresentation claims was error where record contained no evidence showing when plaintiffs received warranty, much less that they could have reviewed warranty to discover alleged misrepresentations before purchasing products at issue). This Court will not endeavor to ferret out a summary judgment argument that defendant could have made, but did not.[28]

Based on this discussion, the Court finds that defendant's Motion for Summary Judgment is properly **denied** as to the misrepresentation cause of action. Movant has not discharged its initial burden under Rule 56, and even if it had, the record viewed in the light most favorable to plaintiffs supports reasonable inferences that defendant made false representations to plaintiffs about the quality of its windows, that the quality of the windows was a material fact to plaintiffs' decision to enter into the commercial transaction, that plaintiffs relied on Marvin's false representations to their detriment, and that plaintiffs were injured thereby. *See, e.g., Cook's Pest Control, Inc. v. Rebar*, 28 So.3d 716, 725 (Ala. 2009) ("To establish a *prima facie* case of fraudulent misrepresentation, a plaintiff must show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance.") (citations omitted).

---

[28] To the extent that defendant's argument is that the existence of the Warranty forbids plaintiffs from pursuing an action for fraud, defendant has presented no authority for such a proposition. There is persuasive authority to the contrary. *See, e.g., Moorer*, 120 F. Supp.2d at 1294 n.2 ("this court believes that a claim for fraud in Alabama is not governed by the limitation of remedies provisions of the U.C.C."); *Ohio Sav. Bank v. H.L. Vokes Co.*, 560 N.E.2d 1328, 1331 (Ohio App. 1989) ("A plaintiff bringing an action for fraud is therefore not limited by the UCC provisions governing warranties, warranty disclaimers and limitations of remedies, but is entitled to seek all damages incurred as a result of the fraud.").

**IV.    Conclusion.**

   For all of the foregoing reasons, it is **ordered** that Defendant's Motion for Summary Judgment (doc. 17) is **granted in part, and denied in part**.  The Motion is **granted** with respect to plaintiffs' causes of action for breach of contract (Claim One of the Complaint) and breach of warranty (Claim Two), and those claims are **dismissed with prejudice**.  The Motion is **denied** with respect to plaintiffs' cause of action for fraudulent misrepresentation (Claim Three), and this action will proceed to trial on that claim only.

   DONE and ORDERED this 1st day of December, 2010.


                                        s/ WILLIAM H. STEELE
                                        CHIEF UNITED STATES DISTRICT JUDGE